**MONTE CHRISTO DRILLING CORPORATION**

v.

**BYRON–JACKSON TOOLS, INC., a Subsidiary of Borg-Warner Corporation, Borg-Warner Corporation, and Universal Insurance Company.**

Civ. A. No. 64–C–81.

United States District Court
S. D. Texas,
Corpus Christi Division.

April 27, 1966.

Atlas, Schwarz, Gurwitz & Bland, Gary Gurwitz, McAllen, Tex., for plaintiff.

House, Mercer, House & Brock, R. H. Mercer, San Antonio, Tex., for defendants Byron-Jackson Tools, Inc., a subsidiary of Borg-Warner Corporation, and Borg-Warner Corporation.

Spafford, Freedman, Hamlin, Gay & Whitham, Dallas, Tex., and Boone, Davis, Cox & Hale, Owen D. Cox, Corpus Christi, Tex., for defendant Universal Insurance Co.

### MEMORANDUM

GARZA, District Judge.

This is a suit originally filed by Monte Christo Drilling Corporation against Byron-Jackson Tools, Inc., a subsidiary of Borg-Warner Corporation, and Borg-Warner Corporation, and Universal Insurance Company with whom Plaintiff had an insurance policy, for damages caused to its Drilling Rig No. 2, December 19, 1963, while it was conducting drilling operations, and in particular was pulling drill pipe out of the hole in a well it was drilling in Brooks County, Texas. The damages complained of were caused when the bail on the Model 4200 B & J Hook suddenly broke. In its suit against Byron-Jackson Tools, Inc., and Borg-Warner Corporation, it contended that the hook that broke was not fit for the services intended, and that it had been negligently manufactured.

Defendants Byron-Jackson Tools, Inc. and Borg-Warner Corporation filed a motion for judgment on the pleadings and a motion for summary judgment which has heretofore been granted, since the Court was advised by all parties that metalurgical tests made on the hook in

question proved that no defect existed in said bail or hook at the time of the accident, and they, therefore, will be dismissed from this cause.

Defendant Universal Insurance Company issued its Policy 3R51711 to Monte Christo Drilling Corporation for a term commencing April 1, 1963, and such policy was in force and effect on the 19th day of December, 1963, at the time of this accident. There is no question that said insurance policy was in force or that proper proof of loss was filed by the Plaintiff with said Universal Insurance Company.

The question before the Court is whether or not the damages suffered by the Plaintiff were covered by the insurance policy issued by the Defendant Universal Insurance Company.

The policy in question is not a general coverage policy subject to exclusions, but is a specified risk policy, and any loss must come under a particular coverage designated or the insurance company has no liability.

The Plaintiff is claiming coverage under Item 7.(k) of the policy, which reads:

"Damage resulting from the raising or lowering operations of the derricks or mast."

It has been stipulated that the operation of raising the derrick or mast had already been completed, and the operation of lowering the derrick or mast had not yet been commenced.

Apparently a derrick and a mast are one and the same thing, and these terms are used interchangeably in the business of oil and gas drilling; the difference being that a derrick has to be erected and disassembled, whereas a mast is raised and lowered and moved from site to site complete.

It has also been stipulated that at the time of the occurrence causing the damages complained of, the derrick or mast was not pulled in nor did it collapse, but it remained errect and standing after the occurrence, and suffered only very minor damage, if any.

Aside from coverage under Item 7.(k) quoted above, the policy also provides for coverage under Item 7.(l) for "damage resulting from the pull-in or the collapse of the derricks or mast."

The Plaintiff claims that the damage suffered by it was covered under Item 7.(k) quoted above, because of other language in the policy, and in particular the part of the policy where the assured warrants certain things. These warranties in the policy read as follows:

"The assured warrants, *as respects coverage 7.(k) and 7.(l)* Described in the face of this policy, *that the operations conducted with the insured derricks or masts, including raising or lowering operations,* shall be with due diligence and in accordance with the recommended safe operating practice of the manufacturer of such derrick or mast *and specifically that the manufacturers rated load limit of such derrick or mast* (excluding safety factor) *shall not be exceeded.*

"The Assured further warrants that as respects derricks or mast raised by a hydraulic mechanism the manufacturers recommendations as to bleeding hydraulic lines and rams and the operation of pumps and general procedure shall be adhered to at all times; as respects derricks or mast raised or lowered by wire lines the bridle, guy lines, if any required, and raising lines shall be inspected before each raising operation and if broken strands are apparent such wire lines will be replaced before commencing raising operations.

"Failure of the Assured to comply with the foregoing warranties shall limit this Company's liability at the time of loss or damage, resulting from the perils insured against in 7.(k) and (l) and as result of windstorm if proper guy lines are not in use, to 50% of the amount of loss or damage and the deductible specified herein shall be applied to the Company's participation only.

"The coverage afforded under 7.(k) or 7.(l) *shall not extend to damage re-*

*sulting from the traveling assembly striking the derrick or mast or the Crown Block while being operated* or to breaking of the hoisting lines on the traveling assembly, unless such damage results in the Derrick or Mast being completely collapsed and falling to the ground."—(Emphasis supplied.)

Oral testimony during the trial of this case, and the demonstration to the Court by means of a model such as the one being used by the Plaintiff in its operations on the occasion in question, established that the mast, the traveling assembly, draw works and other equipment constitute the drilling rig, and that the only use made of the mast during drilling operations was as the support for the traveling assembly which moved up and down in running pipe into the hole, or pulling pipe from the hole. The hook or bail which broke was a part of the drilling assembly.

In order to find coverage for the Plaintiff under Item 7.(k) of the policy, the Court would have to broaden the meaning of the clause "raising or lowering operations of the derricks or mast" so it would cover drilling operations.

Since the mast or derrick insured by the policy in question was the kind that was raised before drilling operations commenced, and lowered after their termination, and the damages which occurred were not caused when said mast was either being lowered or raised, the insurance carrier has denied liability in this case.

The Plaintiff alleges that Item 7.(k), when considered together with the language contained in the entire policy, includes drilling operations such as were being conducted at the time of the occurrence in question. Plaintiff makes the contention that the word "operations" in Item 7.(k) does not refer to the raising or lowering of the mast, but must include the drilling operations being conducted by Plaintiff; and in this interpretation Plaintiff relies heavily on the first part of the warranty which reads:

"The Assured Warrants, as respects coverage 7.(k) and 7.(l) Described in the face of this policy, that the operations conducted with the insured derricks or masts, including raising or lowering operations, shall be with due diligence and in accordance with the recommended safe operating practice of the manufacturer of such derrick or mast and specifically that the manufacturers rated load limit of such derrick or mast (excluding safety factor) shall not be exceeded."

Plaintiff wants to limit the phrase "that the operations conducted with the insured derricks or masts" to Item 7.(k); but it completely disregards the fact that this clause can also be applied to Item 7.(l) which covers damages to the derrick or mast when it collapses or is pulled in during drilling operations.

■ "Operations" means, according to 67 C.J.S., p. 504, the act or effect of operations or operating, and it is defined as meaning action or activity. The derricks or mast are not active after once being raised to an erect position, but merely stand stationary and support the moving parts of the drilling rig. The mast itself performs no action; it does not move; no part of it goes either up or down during drilling operations. Consequently the language of the coverage of Item 7.(k) cannot be logically expanded to include the operations of the drilling assembly while being supported by the mast, in running pipe into the hole or pulling pipe out of the hole. The only operation or action of any mast is when it is being raised into place, and lowered after the drilling operations are completed, and this was what Item 7.(k) covered, and nothing else.

There would have been no point in the policy including Item 7.(l) if the raising or lowering operations of the derricks or mast in Item No. 7.(k) actually referred to drilling operations, because any damage from pull-in or collapse of the mast would necessarily occur during drilling operations and would be included in the coverage designated as Item 7.(k), and there would have been no need for the coverage under 7.(l).

There is no question that the policy issued by the Defendant herein covered the drilling rig in question when the same collapsed or was pulled in during drilling operations, and the warranties only contemplated that the assured would use due diligence in its operation, would not exceed the manufacturer's rated load limit, and if it did not do these things either while lowering or raising the mast under Item 7.(k), or in a subsequent collapse or pull-in during its drilling operations under Item 7.(l), the Company would only be liable for fifty per cent of the loss.

 The insurance contract in question is not an ambiguous contract. Consequently we are not faced with any rules regarding legal favoritism since in the absence of ambiguity in an insurance contract, neither party thereto can be favored in its construction. We cannot say that because the insurance company wrote the policy, the assured paid the premium, and no one can understand what it means, there has to be coverage.

To permit the Plaintiff to recover under Item 7.(k) by broadening the meaning of the clause "raising or lowering operations of the derricks or mast" so it would cover the drilling operations at the time of the occurrence in question, would be to rewrite the policy, and this this Court cannot do. American Casualty Co. of Reading, Pa. v. Myrick, 304 F.2d 179, 5 Cir. 1962.

The contract of insurance in question must be read as a whole, and reading it as a whole there is no question but that Item 7.(k) of the policy did not cover the damages being sued for by the Plaintiff. There is no question but that the Defendant Insurance Company, by its contract of insurance with the Plaintiff, did not intend to cover all drilling operations. If it had so intended, the policy could have very easily have been written to say so.

The contentions of the Plaintiff are untenable. There was no coverage under Item 7.(k), and judgment is being entered this date for the Defendant Universal Insurance Company.

Our finding of no coverage precludes our having to decide the question as to the amount of damages and whether or not the Plaintiff is entitled to attorney's fees.